UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-cr-11-HSM-SKL |
| | ) | |
| MICHAEL O. BROWN., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATION

Before the Court is the Motion to Suppress the Fruit of the Wiretap Dated April 5, 2012 and Request for Evidentiary Hearing [Doc. 512] filed by Defendant Michael O. Brown ("Defendant"). The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) [Doc. 521]. Plaintiff United States of America ("the government") has filed a response in opposition [Doc. 523]. Defendant did not file a reply brief and the motion is now ripe. After considering the four corners of the wiretap application, including the "Authorization for Interception Order Application" dated April 3, 2012 [Doc. 523-1] ("Authorization") and the "Affidavit in Support of Application" signed by Task Force Officer Daniel Warren on April 5, 2012 ("Affidavit") [Doc. 526-1],[1] and the parties' arguments, I **RECOMMEND** that Defendant's motion be **DENIED**.

I.  **BACKGROUND**

The issue at hand centers on a wiretap issued by United States District Judge Harry S.

---

[1] The copy of the Affidavit originally filed [523-2] was not complete. After the Court brought this deficiency to the parties' attention, the government subsequently filed a supplement [Doc. 526] with the complete Affidavit [Doc. 526-1]. The Affidavit filed the second time bears an exhibit stamp, but otherwise appears to be a correct copy of the Affidavit submitted in support of the wiretap application and order at issue. *See* Case No. 1-12-mc-14, filed in this case as Doc. 531.

Mattice for interception of a telephone used by co-defendant Calvin Fontaine Hadley [Doc. 526-1]. Defendant states he was a party to communication intercepted by law enforcement on April 9, 2012 and April 20, 2012. Defendant argues for suppression of all evidence claiming the Affidavit failed to meet the applicable "necessity" requirements and the wiretap application was not properly authorized.

The "Authorization for Interception Order Application" dated April 3, 2012 [Doc. 523-1] ("Authorization"), is signed as follows:

```
Lanny A. Breuer
Assistant Attorney General
Criminal Division
```

APR 0 3 2012

Date

*[signature]*

MARY PATRICE BROWN
DEPUTY ASSISTANT ATIORNEY GENERAL
CRIMINAL DIVISION

The record reflects the Authorization was Exhibit 1 to the wiretap application and the Affidavit was Exhibit 2 to the application presented to Judge Mattice in connection with the order he entered authorizing the wiretap at issue in Defendant's motion [Doc. 531].

## II. ANALYSIS

### A. Hearing

Preliminarily, I will address Defendant's "request" for a hearing in connection with this motion. In his motion, Defendant did not explain in any way why such a hearing would be

2

necessary or why he was requesting a hearing. Local Rule 7.1(b) requires all briefs to include "a concise statement of the factual and legal grounds which justify the ruling sought by the Court." E.D. Tenn. L.R. 7.1(b); see also Fed. R. Civ. P. 7(b) (requiring motions to "state with particularity the grounds for seeking the order"). Arguments not raised and supported in more than a perfunctory manner are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority are considered waived). Defendant does not provide any legal grounds, argument, or citation to any authority, case, or rule in support of his request for a hearing.

If Defendant is seeking a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), commonly referred to as a *Franks* hearing, then Defendant must make a dual showing, which he utterly failed to make. First, the defendant must "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." *Id.* at 155-56. Second, the offending information must be "necessary to the finding of probable cause;" if the offending information is excluded and probable cause still remains, a *Franks* hearing is not required. *Id.* at 156. Defendant has not submitted declarations or other proof to contradict the information included in the Affidavit and Authorization used to obtain the wiretap or made any offer of proof.

As Defendant neither specifically requested a *Franks* hearing, nor cited to *Franks* or any other case law supporting his position that a hearing should be held, I cannot determine a valid reason why a hearing would be proper when the issue of authorization and necessity should be determined from the four corners of the Authorization and Affidavit submitted in connection with the wiretap application. *See United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (stating that

court's review is "limited to examining the information contained in the four corners of the affidavit").

Therefore, Defendant's request for a hearing is **DENIED**.

**B.     Affidavit**

Defendant claims the Affidavit does not sufficiently demonstrate the officers exhausted conventional alternatives to a wiretap and, thus, there is no showing of necessity for the wiretap. Defendant cites to a single case, *United States v. Rice*, 478 F.3d 704 (6th Cir. 2007), but only for the proposition that the remedy for failing to meet the necessity requirements of Title III and the Fourth Amendment is suppression. It appears Defendant's argument is summed up by his statement that "[i]n paragraphs 29-42, the affiant fails to state completely why conventional techniques have failed or are not likely to succeed or are to [sic] dangerous[]" [Doc. 512 at Page ID # 1442].

The Sixth Circuit has held "[t]he basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520." *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988). Title III "was enacted for the purpose of regularizing and controlling the issuance of warrants for wiretaps." *Id*. In pertinent part, Title III "requires a determination that other means of obtaining information, such as physical surveillance, use of informants, and other investigative techniques, would be unsuccessful." *Id.* at 163 (citing 18 U.S.C. § 2518(1)(c)). This requirement "is referred to as the 'necessity requirement.'" *Rice*, 478 F.3d at 710 (quoting *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002)). "The needs statement provision was placed in the statute to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *Alfano*,

838 F.2d at 163 (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). "Thus, wiretaps are not to be used thoughtlessly or in a dragnet fashion . . . . [W]hat is needed is to show that wiretaps are not being 'routinely employed as the initial step in criminal investigation.'" *Id.* (quoting *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977)).

The necessity requirement also "protects against the impermissible use of a wiretap as the 'initial step in [a] criminal investigation.'" *Rice*, 478 F.3d at 710 (quoting *Giordano*, 416 U.S. at 515). There is no requirement, however, that the "government . . . prove that every other conceivable method has been tried and failed or that all avenues of investigation have been exhausted." *Alfano*, 838 F.2d at 163 (citing *United States v. Brown*, 761 F.2d 1272, 1275 (9th Cir. 1985)). Rather, as the Sixth Circuit has stated:

> All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate. While the prior experience of investigative officers is indeed relevant in determining whether other investigative procedures are unlikely to succeed if tried, a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand would be . . . inadequate compliance with the statute.

*Rice*, 478 F.3d at 710 (citations omitted). The Sixth Circuit has held the "necessity requirement" in Title III "do[es] not require proof of the absolute impossibility of all other means. Instead, a reasonable statement of the consideration or use of other investigative means is adequate . . . ." *Alfano*, 838 F.2d at 164.

"Because the necessity requirement is a component of Title III, and because suppression is the appropriate remedy for a violation under Title III, where a warrant application does not meet the necessity requirement, the fruits of any evidence obtained through that warrant must be suppressed." *Rice*, 478 F.3d at 710. However, "a wiretap authorization order is presumed

5

proper, and a defendant carries the burden of overcoming this presumption." *United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995); *see also United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979) ("It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.").

As argued by the government, the Affidavit explains a wire interception is needed because co-defendant Hadley would not sell large quantities of controlled substances to anyone but his trusted few co-defendants and, thus, law enforcement was unable to determine the size of the organization and identify the potential sources [Doc. 523]. The Affidavit lists several other investigative techniques and describes how successful or unsuccessful many were or were thought to be [Doc. 526-1, ¶¶ 14-22, 29-41]. Included in this verbatim list were: physical surveillance; use of vehicle trackers; use of Grand Jury subpoenas; interview of subjects or associates; search warrants; infiltration by undercover officers; use of cooperating individuals; purchase of cocaine by undercover officers or cooperating witnesses; review of telephone records, pen registers, and trap and trace results; pole cameras; trash pulls; financial record searches; and mail covers [Doc. 526-1, ¶ 29]. The Affidavit then addressed the use and results of physical surveillance [Doc. 526-1, ¶¶ 30-31]. While the agents were able to do some surveillance in the area where the drug deals were occurring, the Affidavit also noted that undercover law enforcement vehicles are easily spotted and gave a specific example where such surveillance was detected [Doc. 526-1, ¶ 30]. The Affidavit also sets out that vehicle tracking devices would be unsuccessful because the main target was known to use a variety of vehicles, making it impossible to know which car he would use on a particular day [Doc. 526-1, ¶ 33]. The Affidavit explains why the affiant thought grand jury subpoenas would not be successful [Doc. 526-1, ¶ 34]. The Affidavit sets forth the efforts

made to gather information, and the reasons why interviews of subjects and associates as well as the potential use of search warrants were deemed insufficient [Doc. 526-1, ¶¶ 35-38]. The Affidavit describes that the suspicions of the organization prevented any significant use of confidential informants, undercover agents, or the purchase of drugs in controlled buys [Doc. 526-1, ¶¶ 26, 39-42]. The Affidavit also discusses the limited information derived from the use of telephone records, pole cameras, and trash pulls as well as the risks or futility of continued use of such efforts [Doc. 526-1, ¶¶ 39-46]. Lastly, the affidavit sets out the measures used by law enforcement to conduct a mostly unsuccessful financial investigation and the reasons why "mail covers" were not considered viable [Doc. 526-1, ¶¶ 47-48].

In this case, the Affidavit was sufficiently detailed and included both more generalized statements about drug trafficking organizations made based on the training and experience of the affiant and specifics about the investigation of an alleged drug conspiracy. The Affidavit explains the affiant's view as to the need for the interception, the evidence expected to be obtained through the use of the wiretaps, and the alternative investigative techniques utilized and/or considered, along with the reasons why each had been or would be inadequate in this case. The mere fact that the investigators in this case had already attained some level of understanding as to the workings of the target organization did not preclude them from seeking and successfully obtaining the authorization for the wiretap at issue. The level of detail and amount of evidence provided in the Affidavit shows that law enforcement had either used or given serious consideration to other investigative techniques. As the government argues, officers are not required to exhaust all possible methods of investigation prior to seeking a wiretap, and the Affidavit demonstrates the wiretap was not being "routinely employed as the initial step in criminal investigation." *Giordano*, 416 U.S. at 515.

7
Case 4:13-cr-00011-HSM-SKL   Document 534   Filed 10/24/14   Page 7 of 9   PageID #: 1807

Contrary to Defendant's mostly unsupported protest to the contrary, sufficient information is set forth in the Affidavit to comply with the necessity requirement as it shows the investigators gave serious consideration to other investigative techniques before applying for the wiretap. Further the affiant explained that certain non-wiretap investigative methods, including such tactics as physical surveillance and the use of confidential informants had produced inadequate results. Accordingly, I **FIND** the Affidavit sufficiently established the necessity of a wiretap, as the reasonable non-wiretap investigative techniques used were inadequate, and other techniques were not reasonably likely to succeed or were too risky. Therefore, I **RECOMMEND** that the Court **DENY** Defendant's motion to suppress on this ground.

### C. Authorization

Under Title III, 18 U.S.C. § 2516 (1), the application for a wiretap must be authorized by a senior executive branch official. Section 2518(1)(a) provides that each application for a court order authorizing or approving the interception of a wire or oral communication shall include, among other information, "the identity of the . . . officer authorizing the application." Similarly, § 2518(4)(d) provides that the order of authorization or approval itself shall specify, in part, "the identity of . . . the person authorizing the application." The Authorization itself states that an appropriate person authorized the application and the application identifies the authorizing official. Defendant has made no argument that the Authorization was not actually approved by a statutorily approved official as claimed in the Authorization itself.

Even if there was some technical defect in the Authorization, in the wake of *United States v. Giordano*, 416 U.S. 505 (1974) and *United States v. Chavez*, 416 U.S. 562 (1974), the Sixth Circuit held suppression is not required when a wiretap application or order fails to identify the approving "official at all, so long as the record shows that a statutorily designated official actually

8
Case 4:13-cr-00011-HSM-SKL   Document 534   Filed 10/24/14   Page 8 of 9   PageID #: 1808

gave the authorization." *United States v. Gray*, 521 F. 3d 514, 526-27 (6th Cir. 2008) (citing *inter alia*, *United States v. Callum*, 410 F.3d 571, 576 (9th Cir. 2005) (failure to identify any approving DOJ official in wiretap order deemed "minor insufficiency for which suppression is not the appropriate remedy," where issuing judge was presented with written DOJ authorization for wiretap before signing order); *United States v. Radcliff*, 331 F.3d 1153, 1160-63 (10th Cir. 2003) and *United States v. Fudge*, 325 F.3d 910, 918 (7th Cir. 2003) (where applications were in fact approved by specially designated DOJ officials, failure in wiretap orders to name individuals who authorized application was merely a "technical defect" that did not require suppression)).

Therefore, I also **RECOMMEND** that the Court **DENY** Defendant's motion to suppress on this ground.

## III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[2] that Defendant's motion to suppress [Doc. 512] be **DENIED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).